UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| HUNTER WOODARD, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:18-CV-1836 JCH |
| TOM VILLMER, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of Hunter Woodard (registration no. 42995), an inmate at Southeast Correctional Center ("SECC"), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $31.75. *See* 28 U.S.C. § 1915(b)(1). Furthermore, based upon a review of the complaint, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's

account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $158.75. Accordingly, the Court will assess an initial partial filing fee of $31.75.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim for relief under § 1983, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to, *inter alia*, draw upon judicial experience and common sense. *Id.* at 679.

Pro se complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, they still must allege sufficient facts to support the claims alleged. *Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004); *see also Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (even pro se complaints are required to allege facts which, if true, state a claim

for relief as a matter of law). Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone*, 364 F.3d at 914-15. In addition, giving a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff, who is currently incarcerated at SECC, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights during his incarceration at Farmington Correctional Center ("FCC") in Farmington, Missouri. He names the following individuals as defendants: Tom Villmer (Warden, FCC); James Griffin (Correctional Officer, FCC); Paul Blair (Functional Unit Manager, FCC); Robin Thomas (Caseworker, FCC); and James Horn (Correctional Officer, FCC). Plaintiff brings this action against defendants in their individual and official capacities.

Plaintiff claims that on October 25, 2016, he was in Housing Unit 3, and Officer James Griffin gave plaintiff a conduct violation for possession/use of an intoxicating substance when Griffin found "six small bullets of an unknown green leafy substance appearing to resemble K-2" at plaintiff's feet.

Plaintiff states that after finding the "bullets" of what appeared to be K-2, Griffin took plaintiff to medical for review and then placed plaintiff in segregation that same day.

Plaintiff asserts that after he was taken to segregation, he requested a drug test, a "truth verification exam" and a test of the "contraband," but he does not indicate to whom he made these requests or why the requests were denied, if indeed they were denied.

Plaintiff states that on October 28, 2016, he "went before the adjustment board" relative

to the conduct violation. Plaintiff chose not to testify on his own behalf, and he chose not to have any witnesses to testify at his hearing.

Plaintiff states that at the hearing on that date, there was a written report submitted by James Griffin relating to the incident, as well as picture evidence of the alleged K-2 bullets. A statement from the investigator, named "Ralph" was also given by phone. During Ralph's statement, he indicated that contraband was tested and it did not test positive for THC and was suspected to be K-2.

Plaintiff claims that a finding of guilty was made on that date by the adjustment board, even though he did not have any "documentary evidence" of his own. Plaintiff does not indicate exactly what documentary evidence he would have provided at the hearing.[1] Plaintiff alleges that the disciplinary hearing "failed to follow the mandates of" the Missouri Department of Correction's policies and procedures. Plaintiff believes this resulted in a due process violation.

Plaintiff also complains that the adjustment board did not engage in enough fact-finding on their own. He states that he believes they placed too much weight on Officer Griffin's statement, rather than "acting impartially."

Plaintiff asserts that the adjustment board gave him the following as sanctions after finding him guilty of the offense of "possession/use of an intoxicating substance:" 30 days segregation, one year no premium paying job, recommended for transfer, one year no-contact visits, and referred to the Administrative Segregation Committee.

Plaintiff claims that he went before the Administrative Segregation Committee on November 22, 2016 regarding the conduct violation. He complains that Jason Horn improperly

---

[1] The Court presumes that plaintiff is referring to his prior request to an unknown and unnamed party to be "drug tested" and have a "truth verification exam." As noted, the purported K-2 was tested by the prison officials and the report was given on the results of the test during the hearing. However, it appears that plaintiff believes the failure to provide **him** with drug testing was a violation of his due process rights.

sat on both the adjustment board and the Administrative Segregation Committee, which approved his transfer to another facility and approved the removal of plaintiff's grandfathered property. Plaintiff believes that this was also a violation of his due process rights.

Plaintiff also states that he believes his equal protection rights were violated because the purported K-2 was found in his cell's "common" area, and he was given the conduct violation and his cellmate was not. However, plaintiff, himself, states that the K-2 was found "at his feet." Moreover, he does not indicate exactly why he believes his "equal protection rights" were violated with respect to his cellmate.

Plaintiff seeks injunctive relief and compensatory and punitive damages.

## Discussion

### A. Official Capacity Claims

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). In order to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

5

"Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983").

Defendants are all employed by the Missouri Department of Corrections. The Missouri Department of Corrections is a state agency of the State of Missouri. Therefore, plaintiff's claims against defendants in their official capacities are actually claims against the State of Missouri, their employer. As noted above, however, neither a State nor its officials are "persons" for purposes of 42 U.S.C. § 1983. Accordingly, plaintiff has failed to state a claim against these defendants in their official capacities.

Even if this were not the case, plaintiff has not shown that the Missouri Department of Corrections is liable for his alleged constitutional violations. A governmental entity can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Liability under § 1983 may attach if the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of a governmental entity.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to

"official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390.

Alternatively, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can show the liability of a governmental entity by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581,

585 (8th Cir. 2017).

Plaintiff's extensive complaint contains no allegations pertaining to any policy, custom, or failure to train or supervise on the part of the Missouri Department of Corrections. As such, plaintiff has failed to state a claim against it. Therefore, plaintiff's official capacity claims must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

### B. Individual Capacity Claims Against Defendants Tom Villmer, Paul Blair and Robin Thomas

Plaintiff's individual capacity claims against defendant Tom Villmer, Warden at FCC, Paul Blair, Functional Unit Manager, and Robin Thomas, Caseworker, must be dismissed because plaintiff has not alleged that these individuals had any personal responsibility for the purported constitutional violations.

Vicarious liability is inapplicable to § 1983 suits. *Marsh*, 902 F.3d at 754. As such, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (stating that in order to maintain an action for training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury).

Plaintiff essentially alleges that defendants Villmer, Blair and Thomas should be held liable for violating his due process rights because they ruled against his arguments in his

Institutional Resolution Request and grievance responses asserting that he should not be liable for a conduct violation. He fundamentally states that these individuals had the ability, to overrule the Adjustment Board pursuant to their authority at MDOC.

The mere signing a grievance response not enough to establish the personal liability of Villmer, Blair or Thomas for any alleged constitutional violations. *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (stating that "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").

Although it is not clear if these defendants were involved in plaintiff's requests, at various points in the complaint, plaintiff also suggests that he should have been allowed to receive drug testing or be "truth tested."[2]

To the extent that plaintiff is asserting that his inability to be drug tested or be "truth tested" violates his due process rights, such a claim must fail. Plaintiff does not have a constitutional right to a voice stress analysis as part of the prison disciplinary proceedings against him. *See Freitas v. Auger*, 837 F.2d 806, 812 n.13 (8th Cir. 1988) (stating that an inmate charged with a major conduct violation was not entitled to a polygraph examination as to whether he participated in planning or furthering an escape); *Hill v. Rectenwald*, 2010 WL 2610667, at *3 (E.D. Ark. 2010) (stating that plaintiff did not have constitutional right to use of a voice stress analysis in conjunction with an investigation into his complaints against a prison doctor); and *Boyd v. Anderson*, 265 F. Supp. 952, 962 (N.D. Ind. 2003) (stating that the "due process clause does not guarantee that a prisoner charged with a disciplinary offense will receive a voice stress test"); *Louis v. Department of Correctional Services of Nebraska*, 437 F.3d 697, 701 (8th Cir.

---

[2]Although prisoners charged with a disciplinary violation have a right of reasonable access to information necessary to put on a defense. *Meis v. Gunter,* 906 F.2d 364, 367 (8th Cir.1990). The right is circumscribed by legitimate penological considerations. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974) (officials have discretion to limit access to protect legitimate goals); *Smith v. Rabalais,* 659 F.2d 539, 543 (5th Cir.1981) (right of access to information to prepare a defense not unqualified), *cert. denied,* 455 U.S. 992 (1982).

2006) ("[s]tates need not implement all possible procedural safeguards against erroneous deprivation of liberty when utilizing results of scientific testing devices in accusatory proceedings") *citing Spence v. Farrier*, 807 F.2d 753, 756 (8th Cir. 1986). Accordingly, for these reasons, plaintiff's individual capacity claims against defendants Villmer, Blair and Thomas must be dismissed.

### C. Individual Capacity Claim Against Defendant James Griffin and Jason Horn

Plaintiff has not stated specifically how he believes his due process rights were violated by defendant Griffin. It appears, however, he strongly disagrees with defendant Griffin attributing the alleged K-2 to him, rather than his cellmate. Additionally, he appears to refute the use of Griffin's report as it was used at the adjustment board and the Administrative Segregation Hearing.

Plaintiff also claims that his Fourteenth Amendment right to due process was violated when he was found guilty of the conduct violation of "possession/use of an intoxicating substance" and referred for prosecution without being "truth tested," "drug tested" and given a copy of the drug testing report. The Court reviewed the liability of defendants to "truth test" and "drug test" plaintiff above." The Court will address plaintiff's contention that he was entitled to a copy of the drug testing report prior to the hearing *infra*.

Additionally, plaintiff claims that defendant Horn acted against MDOC Policy by serving on both the adjustment board and the Administrative Segregation Hearing.

In a disciplinary action situation, procedural due process requires that: (1) written notice of the charges be provided to the inmate with at least twenty-four hours to prepare for the hearing; (2) the inmate be provided with a written statement by the factfinders discussing the evidence and reasons supporting the action; and (3) the inmate be afforded the opportunity, so far

10

as safety and security allow, to call witnesses and present documentary evidence. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974); *Tyler v. Black*, 811 F.2d 424, 429 (8th Cir. 1987), *cert. denied,* 490 U.S. 1027 (1989).

The Supreme Court has held that due process is satisfied if a disciplinary board's findings "are supported by some evidence in the record." *Superintendent, Mass. Corr. Institution, Walpole v. Hill,* 472 U.S. 445, 455-56 (1985); *Turner v. Caspari,* 38 F.3d 388, 392 (8th Cir.1994). The Eighth Circuit has held that the results of a drug test are "sufficiently reliable to meet the requirements of the due process clause." *Spence v. Farrier*, 807 F.2d 753, 756 (8th Cir. 1986).

Defendants' failure to provide plaintiff with a copy of the complete laboratory test results does not constitute a due process violation. *See Harrison v. Dahm,* 911 F.2d 37, 41 (8th Cir. 1990) (*Wolff* does not require that inmate be provided with copy of drug test results in the written notice, and prison officials are not required to supply an inmate with a copy of test results at the disciplinary hearing); *see also Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (same), *cert. denied*, 513 U.S. 829 (1994). The Court also concludes that due process does not require the defendants to provide plaintiff with copies of the target testing requests, as an inmate is only entitled to advance written notice of the alleged disciplinary violation. *See Wolff,* 418 U.S. at 563; *Harrison,* 911 F.2d at 41.

With respect to plaintiff's allegations that defendants committed multiple violations of the Missouri Department of Correction's Policy, there is no federal constitutional liberty interest in having state prison officials follow prison regulations. *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003) (citing *Kennedy v. Blankenship,* 100 F.3d 640, 643 (8th Cir.1996)). Plaintiff's allegations in the complaint that he has various liberty interests created by the terms of MDOC

11

Policy and infringed by defendants Horn's[3] and Griffin's alleged violations of the MDOC Policy therefore fail to allege a constitutional claim. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995) (noting that state prison regulations are "not designed to confer rights on inmates").

Under *Sandin,* due process if not implicated unless an inmate is subject to punishment which would be considered atypical, or unless the punishment will inevitably affect the duration of a prisoner's sentence. Therefore, a prisoner can only bring a procedural due process claim if the punishment which the prisoner received as a result of the alleged denial of his due process rights: (1) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 484, or (2) affected the duration of the prisoner's sentence, e.g., parole time, or good time credits. If the punishment meets either of these criteria, a court must analyze whether there has been a deprivation of procedural due process under *Wolff v. McDonnell*, 418 U.S. 539 (1974). In this case, violation of a MDOC Policy does not create a liberty interest. *Cf. Thompson v. Souza,* 111 F.3d at 700 (prisoner plaintiff did not claim that violation of a prison strip search regulation "creates a liberty interest, nor could he make such a claim," *citing Sandin*).

None of the punishments plaintiff alleges he received as a result of the alleged denial of due process did not impose atypical or significant hardships on him in relation to the ordinary incidents of prison life. Plaintiff alleges he was denied visitation, recreation rights, he was transferred, and was placed in administrative segregation. None of these punishments constitute an atypical or significant hardship in relation to ordinary prison life. *See, e.g., Phillips,* 320 F.3d at 847 (denial of exercise for 37 days was not an atypical and significant hardship); *Portley-El v.*

---

[3]Similarly, plaintiff's individual capacity claim against defendant Horn must be dismissed because the allegation that he ruled against plaintiff in his adjustment board hearing and his Administrative Segregation Hearing does not state a claim. The punishments plaintiff alleges he received as a result of the alleged denial of due process did not impose atypical or significant hardships on him in relation to the ordinary incidents of prison life.

*Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) ("We have consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*."); *Ware v. Morrison,* 276 F.3d 385, 387 (8th Cir. 2002) (loss of visitation not atypical or significant); "); *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996) (placement in punitive isolation was not atypical and significant deprivation even though prisoner faced restrictions in mail, telephone, visitation, commissary, and personal-possession privileges).

### D. Plaintiff's Equal Protection Claim against Defendant Griffin

Plaintiff's equal protection claim must also be dismissed for failure to state a claim. Plaintiff has failed to plead an equal protection violation against defendant Griffin. The equal protection clause "prohibits government officials from selectively applying the law in a discriminatory way." *Central Airlines, Inc. v. United States,* 138 F.3d 333, 334-35 (8th Cir.1998) (citation omitted). "It protects 'fundamental rights,' 'suspect classifications,' and 'arbitrary and irrational state action.'" *Brandt v. Davis,* 191 F.3d 887, 893 (8th Cir.1999). Plaintiff has not asserted that he belongs to a suspect class. Moreover, as shown above, there is no indication that plaintiff has a fundamental right at stake, as he has not shown that he was deprived of a liberty interest. And the Eighth Circuit has held that prisoners are not a protected class. *Murray v. Dosal*, 150 F.3d 814, 818 (8th Cir. 1998).

Simply put, plaintiff's allegations of an equal protection violation are conclusory. He asserts only that he was in a shared cell at the time the purported drugs were found, and therefore his cellmate should have also been charged with possession of the purported K-2. However, plaintiff's own allegations in his complaint set forth that the purported K-2 was found at "his feet."

Thus, plaintiff's allegations that he somehow had his equal protection rights violated by

13

being written up by defendant Griffin when his cellmate was not is insufficient to state a claim for relief. *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (explaining that to state a cause of action, a "pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice"). Accordingly, plaintiff's claim for an equal protection violation against defendant Griffin pursuant to § 1983 must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motions for leave to proceed in forma pauperis [Doc. #2 and #5] are **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $31.75 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that an appeal of this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 28th day of August, 2019.

/s/ Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE